IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| RICHARD DALANAS, | |
| --- | --- |
| Plaintiff, | |
| v. | CIVIL ACTION NO. 19-1369 |
| UNI-KEM CHEMICALS, INC., | |
| Defendant. | |

PAPPERT, J.                                                                       August 20, 2019

## **MEMORANDUM**

Richard Dalanas sued Uni-Kem Chemicals, Inc., alleging that Uni-Kem violated his rights under the FLSA and the PMWA by failing to pay him the minimum wage and not properly compensating him for overtime hours. Uni-Kem moves to dismiss the Amended Complaint on the grounds that a portion of the claimed damages is time-barred by the FLSA's and PMWA's statutes of limitations and that Dalanas has not sufficiently pleaded that he was a Uni-Kem employee or that he suffered any damages. The Court denies the Motion for the reasons that follow.

I

Dalanas began his employment with Uni-Kem as a technician on July 1, 2015. (Am. Compl. ¶ 13, ECF No. 7.) He worked in Uni-Kem's Tullytown, Pennsylvania office. (*Id.* at ¶ 14.) Dalanas "perform[ed] manual labor," "pick[ed] up and drop[ped] off equipment," "travel[led] to different job locations" and performed some clerical work. (*Id.* at ¶ 26.) He had no managerial responsibilities. (*Id.* at ¶ 36.)

The Amended Complaint alleges that Uni-Kem "regularly supervised [Dalanas's] work, set [his] schedule, and determined the hours" he worked. (*Id.* at ¶ 23.) Dalanas "used tools and/or equipment provided by [Uni-Kem]" to perform his work. (*Id.* at ¶¶ 17–18.) Uni-Kem "promulgated work rules, policies, and procedures that applied to [Dalanas] and [Uni-Kem] had the authority to discipline [him] for any violation" of those rules. (*Id.* at ¶ 21.) Uni-Kem kept records of Dalanas's work in its Tullytown office. (*Id.* at ¶ 22.)

Dalanas alleges that from July 1, 2015 to August 15, 2018, he "routinely" worked eighty hours per week, including "overnight jobs" approximately twice per week. (*Id.* at ¶¶ 27–28.) He claims Uni-Kem never paid him. (*Id.* at ¶¶ 25, 30.) Instead, Uni-Kem "expected [another Uni-Kem] employee, Robert Albert . . . to pay [Dalanas]." (*Id.* at ¶ 25.) Dalanas received $250 from Albert each week. (*Id.* at ¶ 25.) Dalanas filed this lawsuit on April 1, 2019. (Compl., ECF No. 1.)[1]

II

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the plaintiff must allege "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). A complaint must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are

---

[1] Robert Albert also sued Uni-Kem on April 1, 2019, alleging that Uni-Kem violated his rights under the FLSA and the PMWA by not properly compensating him for overtime hours. *See Albert v. Uni-Kem Chems., Inc.*, No. 19-cv-1368 (E.D. Pa. Apr. 1, 2019).

true (even if doubtful in fact)." *Id.* (citation omitted). While a complaint need not include detailed facts, it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

*Twombly* and *Iqbal* require the Court to take three steps to determine whether the complaint will survive defendants' motion to dismiss. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). First, it must "take note of the elements the plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Next, it must identify the allegations that are no more than legal conclusions and thus "not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 679). Finally, where the complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679). The Court should "construe truths in the light most favorable to the plaintiff, and then draw all reasonable inferences from them." *Id.* at 791.

III

A

Uni-Kem first argues that Dalanas's claims for damages that allegedly accrued between July 1, 2015, and April 1, 2016 are barred by the FLSA's and PMWA's statutes of limitations. *See* 29 U.S.C. § 255(a) ("[E]very [FLSA] action [for unpaid minimum wages or overtime compensation] shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years . . . ."); 43 Pa. Cons. Stat. §

260.9a(g) ("No . . . legal action shall be instituted under the [PMWA] for the collection of unpaid wages . . . more than three years after the day on which such wages were due and payable . . . ."). Dalanas concedes that his claims for damages before April 1, 2016 are outside of the applicable limitations periods, but argues that the statutes of limitations are equitably tolled because Uni-Kem failed to post summaries of the FLSA and PMWA in its Tullytown office as required by both statutes. *See* (Am. Compl. ¶¶ 48, 55, 63, 71); 29 C.F.R. § 516.4; 43 Pa. Cons. Stat. § 333.108.

Dalanas cites *Bonham v. Dresser Industries, Inc.*, 569 F.2d 187 (3d Cir. 1977), in which the Third Circuit Court of Appeals held that an employer's failure to post an ADEA notice in the workplace tolls the ADEA's limitations period for filing a claim with the Secretary of Labor. District courts within the Third Circuit have applied *Bonham* in the FLSA and PMWA contexts, holding that an employer's failure to post summaries of the FLSA and PMWA in the workplace tolls the applicable statutes of limitations. *See, e.g.*, Order, *Albert v. Uni-Kem Chems., Inc.*, No. 19-cv-1368 (E.D. Pa. Aug. 7, 2019), ECF No. 16; *Ying Yang v. Vill. Super Mkt., Inc.*, 2019 WL 1275059 at *4 (D.N.J. Mar. 20, 2019), *reconsideration denied*, 2019 WL 2135908 (D.N.J. May 14, 2019); *Friedrich v. U.S. Computer Servs., Inc.*, 833 F. Supp. 470, 478 (E.D. Pa. 1993); *Kamens v. Summit Stainless, Inc.*, 586 F. Supp. 324, 328 (E.D. Pa. 1984).

Accepting as true Dalanas's allegations that Uni-Kem failed to post FLSA and PMWA summaries in its Tullytown office, the Amended Complaint's allegations are

4

sufficient to toll the FLSA and PMWA's statutes of limitations at this stage of the case. The motion to dismiss on this ground is denied accordingly.[2]

B

Uni-Kem also argues that the Amended Complaint does not sufficiently allege an employer-employee relationship between Uni-Kem and Dalanas. The "first inquiry in most FLSA cases is whether the plaintiff has alleged an actionable employer-employee relationship." *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 148 (3d Cir. 2014). "When determining whether someone is an employee under the FLSA, 'economic reality rather than technical concepts is . . . the test of employment.'"[3] *Id.*

---

[2] Uni-Kem argues that if the statutes of limitations are equitably tolled, the Court should convert the Motion to one for summary judgment under Federal Rule of Civil Procedure 12(d) and hold an evidentiary hearing to consider whether FLSA and PMWA notices were posted in the Tullytown office. The decision to consider materials outside of the pleadings and convert a motion to dismiss to a motion for summary judgment is within the discretion of the Court. *See Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992) (citing 5A Wright & Miller, Federal Practice and Procedure § 1366, at 491 (1990)). Because Uni-Kem's statute of limitations argument affects only a portion of Dalanas's claimed damages—those allegedly accrued between July 1, 2015, and April 1, 2016—the Court declines to exercise its discretion to hold an evidentiary hearing and consider evidence outside of the pleadings.

[3] The Third Circuit has identified six factors to aid courts' determinations of whether a worker is an employee:

> 1) the degree of the alleged employer's right to control the manner in which the work is to be performed; 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; 3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; 4) whether the service rendered requires a special skill; 5) the degree of permanence of the working relationship; 6) whether the service rendered is an integral part of the alleged employer's business.

*Martin v. Selker Bros.*, 949 F.2d 1286, 1293 (3d Cir. 1991) (quoting *Donovan v. DialAmerica Marketing, Inc.*, 757 F.2d 1376, 1382 (3d Cir. 1985), *cert. denied*, 474 U.S. 919). Neither the presence nor the absence of any factor is dispositive. *Id.*

Pennsylvania courts also use the "economic reality" test to determine whether a worker is an employee under the PMWA. *Williams v. Sweet Home Healthcare, LLC*, 325 F.R.D. 113, 126 (E.D. Pa. 2018), *leave to appeal denied*, 2018 WL 4008363 (3d Cir. Mar. 6, 2018) (citing *Com., Dep't of Labor and Indus., Bureau of Labor Law Compliance v. Stuber*, 822 A.2d 870, 873 (Pa. Commw. Ct. 2003)).

The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." 29 U.S.C. § 203(d). An "employee" is "any individual employed by an employer." *Id*. at § 203(e)(1). Under the Act, "employ" means "to suffer or permit to work." *Id*. at § 203(g). The Third Circuit Court of Appeals has observed the "striking breadth" of these definitions, *Thompson*, 748 F.3d at 148, and the United States Supreme Court "has even gone so far as to acknowledge that the FLSA's definition of an employer is 'the broadest definition that has ever been included in any one act.'" *Id*. (quoting *In re Enterprise Rent-A-Car Wage & Hour Emp't Prac. Litig*., 683 F.3d 462, 467–68 (3d Cir. 2012)).

Dalanas's Amended Complaint alleges that he began working for Uni-Kem in its Tullytown office in 2015. Uni-Kem provided Dalanas tools and equipment for his work and Uni-Kem kept records of the work Dalanas performed. Accepting these allegations as true, Dalanas has sufficiently pleaded an employer-employee relationship with Uni-Kem under the FLSA and the PMWA.[4]

C

Finally, Uni-Kem argues that Dalanas has not alleged that he suffered any damages because the Amended Complaint states that Dalanas "was paid by Mr.

---

[4] Uni-Kem argues that Dalanas's "boilerplate" allegations of an employer-employee relationship are insufficient. It cites *Attanasio v. Community Health Systems, Inc*., 863 F. Supp. 2d 417, 421 (M.D. Pa. 2012), in which nurses brought FLSA claims against a Pennsylvania hospital and health care system at which they worked and a Tennessee corporation that acquired the health care system during their tenure at the hospital. The Tennessee corporation argued that the complaint did not sufficiently allege it had an employer-employee relationship with the nurses. The court agreed, noting that while a parent and subsidiary corporation sometimes share FLSA liability, there is a "strong presumption" that the parent corporation is not the employer under the FLSA. *Attanasio*, 863 F. Supp. 2d at 422. The nurses did not allege that the Tennessee corporation exerted "daily control" over them and did not provide "details as to the mechanics of [the Tennessee corporation's] actual involvement as a parent corporation," so the court dismissed the claims against the Tennessee corporation. *Id*. at 425. Dalanas is not attempting to hold Uni-Kem liable as a parent corporation for acts of a subsidiary. Rather, Dalanas alleges that he worked for Uni-Kem.

[Robert] Albert for all hours worked and all hours worked over forty (40) hours per week." (Am. Compl. ¶ 40.) Uni-Kem argues that Dalanas is "seek[ing] a double recovery" for his work. (Def.'s Reply Supp. Mot. Dismiss 7, ECF No. 13.)

Dalanas's Amended Complaint alleges that he worked approximately eighty hours each week and received $250 from Albert in return. This is sufficient to state a claim under the FLSA and PMWA that Uni-Kem did not pay Dalanas the minimum wage or properly compensate him for overtime hours. His allegation that he received $250 for "all hours worked" is not, as Uni-Kem contends, an "admi[ssion] . . . that he has been paid in full." (Def.'s Reply 7.) An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.